MORTON STEIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91981.   Promulgated April 30, 1940.

*Louis Salant, Esq.*, and *Louis F. Gosswein, C. P. A.*, for the petitioner.
*Conway N. Kitchen, Esq.*, for the respondent.

OPINION.

TYSON: This proceeding involves a portion of an income tax deficiency of $1,304.97 determined by respondent for the year 1934.

The only question is whether the income of a certain trust for the year 1934 is taxable to the petitioner, the grantor of such trust.

The petitioner, a resident of the City and State of New York, has been for many years engaged in practicing his profession as attorney at law. The petitioner's wife, Berdie H. Stein, and their daughter, Margaret, born June 22, 1910, were living throughout the taxable year. Their son, David, died in 1933.

By a written trust instrument, executed in New York on December 3, 1923, the petitioner, as grantor, transferred certain described stocks and securities to his wife, Berdie H. Stein, Lawrence Hockheimer, and himself, as trustees of the "Berdie H. Stein Trust", to hold the trust property with or without designation as trustees, to manage, invest, sell, and reinvest the same and to pay over the net income "to Berdie H. Stein, the wife of Grantor, or for her account, annually or oftener, so long as she lives, Provided, Nevertheless, that in the event of illness or other undue condition it becomes necessary in the opinion of Grantor, if living * * * to pay over any part of the principal to meet the expenditures thereby required, the Trustees are authorized to pay over such amounts as may be thus necessary and as to any part of the principal so paid over the trust shall cease." Upon the death of Berdie H. Stein the then remaining "principal" of the trust was to be paid over to the grantor, if living, or, if dead, such principal was, upon the death of David Stein, a contingent beneficiary of the income, to be "paid over and belong absolutely" to grantor's daughter, Margaret, or her issue, with certain contingent remainders not material here. The trust would thereupon terminate. The petitioner's purpose in creating the trust was to provide his wife with an independent income so as to enable her to do the things she liked to do without calling on him for money.

The trust instrument reserves to the grantor the right, during his lifetime: To direct the trustees to sell any trust property; to designate the kind of investment to be made with any part of the trust corpus without any responsibility being imposed upon the trustees because of such investments; to direct the voting of all stock and securities held by the trust; to designate the depository of the trust funds; to fill trustee vacancies and designate other or additional trustees; and, further, the right "to alter, modify or vary the terms of the trust hereby created, but not to revoke the said trust or any part thereof, nor to alter the same so that any part of the income shall be paid to him during the lifetime of BERDIE H. STEIN." The trust instrument further provided that no part of the income or corpus to which

any beneficiary might be entitled could be alienated, assigned, or pledged by any beneficiary prior to actual payment of such part to such beneficiary.

The trustees accepted the trust created by the trust instrument and acknowledged receipt of the properties described therein. Upon execution and delivery of the trust instrument the properties involved were transferred to the trustees.

Over the period of years since the trust was created the petitioner has, on many occasions, directed the sale of trust property and the reinvestment of the proceeds therefrom in many different types of investment. Also, he has attended stockholders' and directors' meetings of corporations in which the trust held stock and he has always voted such stock. He exercised such reserved powers so as to centralize authority over the trust property.

No understanding or agreement has existed between the petitioner and his wife as to her use of the income of the trust and she was free to and did use such income as she chose. The petitioner maintained a home for himself and his family and paid the household expenses.

A bank account was opened in the name of "Berdie H. Stein Trust" and the checks drawn on such account were signed in that name by petitioner or one of the other trustees, as trustee. Excepting checks made for disbursements on account of trust expenses or investments, all checks were made at the request of the beneficiary and payable to her or her nominee. Berdie H. Stein has maintained her own personal bank account, but also has treated the income of the trust in the hands of the trustees as a "second" bank account and has directed the trustees as to whom she desired checks to be made payable and her directions have been followed. In that manner Berdie H. Stein withdrew and used as much of the net trust income as she desired. In the taxable year Berdie H. Stein withdrew the amount of $2,054.53 for her own personal use and the unwithdrawn balance of $3,786.15 of such income was credited to her in an undistributed income account and at all times remained subject to her demand. In the books of account maintained by the trust there were entered all disbursements and the purposes thereof.

The total net income of the Berdie H. Stein trust for the taxable year 1934 was $5,840.68, of which $1,120.08 represented capital gains, $4,137.51 represented dividends on stocks of domestic corporations, and $583.09 represented other net income. All of such income, whether or not actually received by Berdie H. Stein during 1934, was included in her gross income as reported in the income tax return filed by her for the year 1934 and the tax shown to be due was paid by her.

In determining the deficiency in controversy the respondent has, *inter alia*, included in the petitioner's gross income for 1934 the amount of $5,840.68 representing the net income of the Berdie H. Stein trust.

The petitioner contends that the income in question was that of a valid irrevocable trust, the grantor of which reserved no power to revest in himself any part of the corpus or to receive any part of the income therefrom; that the income of the trust was distributable to Berdie H. Stein for her unfettered use and was taxable to her; and that no part of such income is taxable to petitioner under any of the provisions of the revenue acts.

The respondent contends that the income in question is taxable to petitioner on either one of three grounds, viz., (1) under the provisions of sections 166 and 167 of the Revenue Act of 1934,[1] or (2) because such income was used in the discharge of the grantor's legal obligation to support his wife, or (3) under the provisions of section 22 (a) of the Revenue Act of 1934,[2] because, despite the execution of the trust instrument, the petitioner retained such substantial attributes of ownership of the property transferred in trust as to remain, in substance, the owner thereof.

In view of the respondent's third contention, the facts in the instant case must be considered in the light of the United States Supreme Court's decision in *Helvering* v. *Clifford*, 309 U. S. 331.

---

[1] SEC. 166. REVOCABLE TRUSTS.
Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—
(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or
(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom,
then the income of such part of the trust shall be included in computing the net income of the grantor.

SEC. 167. INCOME FOR BENEFIT OF GRANTOR.
(a) Where any part of the income of a trust—
(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or
(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or
* * * * * * *
then such part of the income of the trust shall be included in computing the net income of the grantor.

[2] SEC. 22. GROSS INCOME.
(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

That case involved a short term trust as to which the grantor was also the trustee and the wife of the grantor was the income beneficiary. Upon termination of that trust, at the end of five years, or earlier upon certain contingencies, the entire corpus thereof was to go to the grantor. During the continuance of the trust, the grantor, as trustee, had the power to exercise voting rights incident to the trusteed shares of stock; to sell, exchange, mortgage, invest, and reinvest the trust property in his absolute discretion and without restriction; to collect and distribute the income; to compromise claims; and to hold the trust property in the names of others, or in his own name, individually; and, further, the trust instrument contained a clause exculpating the trustee from the result of certain of his acts.

In reaching the conclusion that the grantor of the trust, in the *Clifford* case, *supra*, continued to be the owner of the trust corpus for the purposes of the broad provisions of section 22 (a), *supra*, the Court said, "the short duration of the trust, the fact that the wife was the beneficiary, and the retention of control over the corpus" by the grantor "all lead irresistibly" to such conclusion. The Court then laid stress upon the extent and effect of the grantor's retained dominion over the trust corpus through control over investment and otherwise, and, also, upon the fact that the trust accomplished, at best, a temporary reallocation of the income therefrom within an intimate family group, and concluded that, "when the benefits flowing to him (grantor) indirectly through the wife are added to the legal rights he retained, the aggregate may be said to be a fair equivalent of what he previously had. To exclude from the aggregate those indirect benefits would be to deprive § 22 (a) of considerable vitality and to treat as immaterial what may be highly relevant considerations in the creation of such family trusts. For where the head of the household has income in excess of normal needs, it may well make but little difference to him (except income-tax-wise) where portions of that income are routed—so long as it stays in the family group. In those circumstances the all-important factor might be retention by him of control over the principal."

There are some differences between the provisions of the trust instruments in the *Clifford* case and the instant case, which are, in effect, as follows: In the *Clifford* case the term of the trust was for five years, or a shorter period in certain contingencies, at the expiration of which period the trust terminated and the corpus thereof was to go to the grantor (sole trustee of the trust), while here the term of the trust was for at least the lifetime of the grantor's wife; in the *Clifford* case the trust instrument provided that the net income

was to be held for the exclusive benefit of grantor's wife and the accumulation, if any, paid her at the termination of the trust, but that during the duration of the trust only such part of the net income should be currently paid the wife as might be determined in the absolute discretion of the trustee, while here the trust instrument provides that the trustees shall pay the net income of the trust annually or oftener to the grantor's wife; in the *Clifford* case the trust instrument provided that the trustee could compromise any claim held by him as trustee, while here the grantor did not expressly reserve such power; in the *Clifford* case the trustee could hold any property of the trust estate in the names of "other persons or in my own name as an individual," except as otherwise provided, while here the trust property could be held in the names of the trustees, with or without their being designated as trustees.

While there were differences between the provisions of the trust instruments in the *Clifford* case and the instant case, it is to be noted that, on the other hand, the trust instrument in the instant case contained other provisions which are not shown to have been contained in the trust instrument in the *Clifford* case, to wit, the grantor reserved the right to designate the depository of the trust funds; the grantor reserved the right to fill trustee vacancies and to designate other or additional trustees; and the grantor reserved "the power * * * to alter, modify or vary the terms of the trust * * *, but not to revoke the trust, or any part thereof, nor to alter the same so that any part of the income shall be paid to him during the lifetime" of his wife, the beneficiary.

The trust instrument in the instant case also contains other provisions substantially the same as those contained in the trust instrument in the *Clifford* case (except that in the *Clifford* case such provisions related to the power granted to the trustee, who was also the grantor, while here, they relate to the power reserved by the grantor individually), to wit: The grantor here had the right to direct the sale of any of the trust property and the trustee there had the right to make such sale; the grantor here had the right to direct and designate the kind of investment or reinvestment to be made of the trust property and the trustee there had the right to himself make such investment or reinvestment of the trust property; and the grantor here had the right to direct the voting of all stocks and securities held by the trust, and the trustee there had the right to himself vote such stocks and securities. In the trust instruments in both the *Clifford* case and the instant case there was also an exculpatory clause protecting the trustees from the results of certain of their acts and there was another clause, in both trust instruments,

prohibiting the alienation, assignment, or pledge by any beneficiary of any part of the income or corpus prior to actual payment thereof to such beneficiary.

The grantor here not only retained powers of dominion and control, closely parallel with those granted the trustee in the *Clifford* case, but also he reserved additional powers which extend beyond those given the trustee in the Clifford case, in (a) the important particular of the grantor's retained power to add to the number of trustees and (b) the more important particular of the reservation by the grantor of the power to alter, modify, or vary the terms of the trust, except that he could not revoke the trust or alter or modify it so that he would receive any part of the income during the life of his wife. Under this latter power, the grantor retained a very vital incident of ownership, namely, the right, individually to change the beneficiaries of the corpus and to give the income therefrom to whomsoever he pleased, whensoever he pleased.

In the *Clifford* case, *supra*, the Court said, that "no one fact is normally decisive but that all considerations and circumstances of the kind we have mentioned are relevant to the question" of the continued ownership by the grantor of trusteed property, for the purposes of section 22 (a), *supra*. The same is true here and, in our opinion, the principal differences between the provisions of the trust instruments in the two cases, viz., there it was a short term trust and the grantor was the sole trustee while here it was not a short term trust and the grantor was one of three trustees, are without material significance and do not warrant a conclusion here different from that reached in the *Clifford* case. To hold otherwise, under the facts of this case, would be to disregard the all-important factor of dominion and control over the trust corpus, as well as the factor of the indirect benefits of the trust flowing to grantor through his wife, the factors stressed by the Court in the *Clifford* case, and would rest the decision herein upon refined legal forms rather than substance.

We conclude that during the year 1934 the petitioner continued to be the owner of the corpus of the trust here in question, for the purposes of section 22 (a) of the Revenue Act of 1934, and that the income therefrom is taxable to him for that year. Such conclusion obviates the necessity of discussing the other contentions made by respondent.

Reviewed by the board.

*Decision will be entered for the respondent.*

MURDOCK dissents.