STERLING MORTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 99967, 100899.   Promulgated November 21, 1941.

*B. M. Price, Esq.*, for the petitioner.
*F. F. Korell, Esq.*, for the respondent.

774

OPINION.

HARRON: The sole question is whether petitioner was taxable in 1935, 1936, and 1937 on the net income of the trust which he created on December 24, 1934. Respondent determined that "under the provisions" of the Revenue Acts of 1934 and 1936 the net income of the trust was includable in petitioner's gross income for the taxable years 1935 and 1937. In his brief respondent contends, *inter alia*, that in all of the taxable years petitioner was taxable on the net income of the trust under section 22 (a) of the Revenue Acts of 1934 and 1936 and in support of such contention relies especially on *Helvering* v. *Clifford*, 309 U. S. 331.

The net income of the trust in the taxable years was, in our opinion, taxable to petitioner under the rule of the *Clifford* case. The basic question, as stated in the *Clifford* case, is whether "the grantor after the trust has been established may still be treated * * * as the owner of the corpus" and the answer to that question depends "on an analysis of the terms of the trust and all the circumstances attendant on its creation and operation." With respect to the particular trust involved in the *Clifford* case, the Supreme Court stated that "the short duration of the trust, the fact that the wife was the beneficiary, and the retention of control over the corpus by [the grantor] all lead irresistibly to the conclusion that [the grantor] continued to be the owner for purposes of section 22 (a)."

The rule of the *Clifford* case is applicable here, for the following reasons: During the life of the trust, the net income was to be paid, and was paid, to petitioner's wife. Thus, the trust income was to remain within the grantor's own family group. Petitioner retained substantially complete control over the corpus of the trust. See *Frank G. Hoover*, 42 B. T. A. 786; *Commissioner* v. *Buck*, 120 Fed. (2d) 775; *Commissioner* v. *Barbour*, 122 Fed. (2d) 165. This is most evident from the terms of the trust reserving in petitioner or his agent the exclusive right to direct the sale, exchange, investment, and reinvestment of the trust corpus. As a matter of fact the trustee could not make any purchases, sales, investments, etc., except under the direction

of petitioner or his agent. Article 3 of the trust provides as follows:

\* \* \* So long as said right to control investments is retained by the Grantor, acting either himself or through his agent, no sales or exchanges or changes in investments of the trust estate shall be made by the Trustee, except on directions from the Grantor or his agent.

Petitioner could, at any time, by written notice, relinquish investment control to the trustee, but he could likewise, at any time, upon written notice, resume investment control. There is nothing in the record to show that, from the time of the creation of the trust up to the present time, petitioner has ever relinquished investment control, nor is there anything in the record to show what changes, if any, have ever been made in the investments of the trust. Further evidence of the extensive control retained by petitioner over the trust corpus is found in the fact that the trustee was under a duty to make payments out of principal of the trust on loans against any insurance policies belonging to the trust in accordance with the directions of the grantor or his agent. During the taxable years, as far as the record shows, petitioner did not transfer any insurance policies to the trust, but he could have done so if he so desired, and if he had obtained, in advance, any loans under the insurance policies, the trustee could be required to apply the trust corpus in payment of such loans. Also, petitioner could direct the trustee to pay out of trust income the compensation due any agent appointed by the grantor for his services.

The trust in question had a maximum limit of ten years. It could be terminated before the expiration of ten years either by the death of petitioner's wife or by the joint action of petitioner and his wife. Upon the termination of the trust the balance of the corpus was to revert to petitioner or to his estate after payment to petitioner's wife or his daughter of any profits realized from the sale or exchange of any of the securities constituting the trust corpus. In the event of petitioner's death prior to the termination of the trust, the trustee is given very extensive powers to make loans to petitioner's estate and to purchase property from his estate. See *Commissioner* v. *Berolzheimer*, 116 Fed. (2d) 628; *Helvering* v. *Elias*, 122 Fed. (2d) 171; *Snowden A. Fahnestock*, 43 B. T. A. 569; *Commissioner* v. *Barbour, supra*. Cf. *Commissioner* v. *Jonas*, 122 Fed. (2d) 169.

The retention of control over the corpus by petitioner, the short duration of the trust, and the fact that the wife was the beneficiary, lead to the conclusion here that petitioner continued to be the owner of the trust corpus for purposes of section 22 (a). This case is controlled by the *Clifford* case. See *Commissioner* v. *Barbour, supra;* *Helvering* v. *Elias, supra*. It is held that petitioner is taxable on the entire net income of the trust in each of the taxable years.

The parties have stipulated that, in the event of decision in respond-

ent's favor, there are deficiencies in income tax in each of the taxable years in the stipulated amounts. Accordingly,

*Decision will be entered in Docket No. 99967 that there is a deficiency in income tax of $23,908.90 for 1935, and in Docket No. 100899 that there are deficiencies in income tax of $1,962.87 for 1936 and $14,688.62 for 1937.*