P. D. George v. Commissioner.
George v. Commissioner
Docket No. 109866.
United States Tax Court
1943 Tax Ct. Memo LEXIS 195; 2 T.C.M. (CCH) 455; T.C.M. (RIA) 43346; July 16, 1943
*195 Under the facts: held, that petitioner, as the grantor in a certain trust created for the benefit of his sons, is taxable with the income therefrom. Held, further, that petitioner, as the grantor of another trust created for the benefit of his daughters, is not taxable with the income from that trust. Abraham Lowenhaupt, Esq., 408 Pine St., St. Louis, Mo., for the petitioner. J. E. Marshall, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion Respondent determined a deficiency against the petitioner in income tax for the year 1939 in the sum of $42,867.51. Three issues are presented for our consideration. Two involve the question of whether income from each of two trusts created by the petitioner is includable in his gross income for the year 1939. The third issue involves the deductibility of certain non business expenses in the amount of $1,636.67 paid by the petitioner in 1939. The proceeding has been submitted upon the pleadings, stipulation of facts, and income tax return of the petitioner for the taxable year. The stipulated facts not set forth are included herein by reference. Findings of Fact The petitioner resides in St. Louis, Missouri. *196 He filed his income tax return for 1939 on the cash basis with the collector of internal revenue for the first district of Missouri. On December 23, 1939, the petitioner created a trust naming himself and two other individuals as trustees. Neither of the other two trustees is related to the petitioner. The petitioner transferred 640 shares of the capital stock of the P. D. George Company to the trust. Under the trust instrument the trustees were given broad powers of management. The trust instrument provided, inter alia, that the assets thereof were to be divided into seven parts. The income of the first of such parts was to be paid to one son, Pericles F. George, in quarterly or other convenient installment for life, or in certain eventualities to his wife and children, and on his death, the corpus was to be distributed to his then living children and to the descendants of any child then dead, per stirpes. The entire net income of the remaining six parts was to be paid to the six other sons equally in quarterly or other convenient installments until five years after the death of the petitioner, at which time the corpus of those parts then remaining was to be distributed to *197 the six sons or, in the event of the death of any of them before the period of termination, to his descendants, per stirpes. Article three of the trust instrument provides, inter alia, that: In the event of the death of any of Grantor's seven (7) sons leaving no descendant then living the share held for such son shall go to the others of Grantor's said seven (7) sons, and to the descendants then living, per stirpes, of any of them who have died, * * * * * * * *
If all of Grantor's said six (6) sons and the said children of PERICLES FRANCIS GEORGE should die before their respective shares have been paid over to them, free from trust, and no descendant of any of them is living to take the trust estate, then upon the death of the last survivor of them and PERICLES FRANCIS GEORGE, the trust estate shall be paid over and distributed to the persons who may then be the heirs at law of the Grantor, according to the laws of the State of Missouri then in force Article six of the trust instrument provides as follows: These trusts are created and the interests of the beneficiaries, hereinbefore set out, shall be vested, but subject however to divestiture as follows: 1. The Grantor *198 may at any time and from time to time modify or alter this indenture and the disposition of the trust property and the estates and interests therein created and the income arising therefrom, but in the following particulars only: (A) By disposing of the income derived after any such modification or alteration becomes effective otherwise than as originally provided in this indenture, or otherwise than as provided by any amendment, by altering the proportion or amount of such income to be paid to or applied to the use of any one or more of the beneficiaries, by cancelling the share of any one or more of the beneficiaries in whole or in part, by substituting any beneficiary or beneficiaries in the place of any one or more of them, by adding to the number of beneficiaries, by providing for the proportion or amount of income to be paid or applied to the use of such additional or substituted beneficiaries; provided, however, that in no event shall any such modification or alteration (one or more) direct, permit or allow the said income to be accumulated for or paid or applied to or for the use or benefit of the Grantor. (B) By directing the distribution of the principal of any of the *199 trust estates, as the same shall be constituted at any time, otherwise than as originally provided in this indenture, or otherwise than as provided by any amendment, by altering the proportion or the amount of the principal of any of the trust estates to be assigned, paid, and set over to any one or more of the beneficiaries, by cancelling the share of any one or more of the beneficiaries in whole or in part, by substituting any beneficiary or beneficiaries in the place of any one or more of them, by adding to the number of said beneficiaries, by providing for the proportion or amount of the principal of any of the trust estates to be assigned, paid, and set over to such additional or substituted beneficiary, or for the manner in which all or any part of said principal shall be divided or distributed upon the termination of the trusts; provided, however, that in no event shall any such modification or alteration direct, permit or allow any part of the principal of the trust estates to be paid or applied to or for the use or benefit of the Grantor or his estate. (C) Any modification or alteration of this indenture provided for in subdivisions (A) or (B) of this ARTICLE SIX must be *200 by instrument in writing duly executed by the Grantor and delivered to the Trustees and shall become effective thirty (30) days next following the delivery of such instrument. 2. The Grantor may at any time and from time to time direct the Trustees to distribute, free from trust, any share of a beneficiary, in whole or in part, to the beneficiary who shall be then entitled to the income currently distributable therefrom; provided, however, that any such direction must be by instrument in writing duly executed by the Grantor and delivered to the Trustees, and shall become effective on the delivery of such instrument, and the Trustees shall immediately make distribution as in such instrument directed. The trust instrument provided further that while the petitioner, was serving as a cotrustee he was to receive one-half of the compensation to be paid to the trustees for their services rendered to the trust and the other half was to be divided equally between the other trustees. The petitioner has never exercised his power under the above-quoted article six to change the interest of the beneficiaries. During the taxable year the youngest of the petitioner's sons was 29 years of age and *201 the oldest was 43 years of age. For many years prior to December 1939 and continuously since that time the seven sons have been married and living apart from the petitioner and apart from each other. During 1939 and for many years prior thereto each of the seven sons had an independent income, in addition to his share in 1939 of the trust income, and maintained himself and his family. The trustees adopted the calendar years as the accounting period of the trust and reported the income of the trust for each calendar year ending December 31. During 1939 prior to the creation of the trust for the benefit of the petitioner's sons, the petitioner owned all of the 1,000 shares of the P. D. George Company. This stock then had a value of $700 a share. In addition to the transfer of the 640 shares to the trust for the benefit of his sons, the petitioner transferred 60 shares of such stock by gift on December 23, 1939. At no time during 1939 did the petitioner own assets in excess of $50,000, except for the stock in the P. D. George Company. The income tax return of petitioner for the taxable year shows that he received $15,000 as salary from the P. D. George Company; dividends in the amount *202 of $38,519.38, including dividends from the P. D. George Company of $36,000; interest in the amount of $647.23; $960 as trustee's fee in the P. D. George trust; and that his not income was $49,896.89. Between December 23, 1939, when the trust was created, and December 31, 1939, the gross income received by the trustees amounted to $76,800, and was all distributed before December 31, 1939. Of this amount $74,880 was distributed to the seven sons and $1,920 to the trustees for services as provided under the terms of the trust instrument. The petitioner reported in his gross income his share ( $960) of trustees' commissions as part of his salary income on his Federal income tax return for 1939, but did not report in his gross income any other part of the $76,800. The respondent denied the total trustees' commissions as a deduction from the income of this trust and increased the petitioner's income by the total amount of the gross income of the trust on the ground that such amount was taxable to the petitioner under section 22 (a) of the Internal Revenue Code. It is stipulated that the amount of such increase was excessive by the amount of $960. Effect to this stipulation will be given *203 under Rule 50. On March 28, 1931, the petitioner by written instrument created another trust, naming himself and the Mercantile-Commerce Bank and Trust Company as trustees, and transferring certain securities to the trust. This trust was amended on June 2, 1932 and December 31, 1934. The corporate trustee is a large bank in St. Louis, Missouri and is not controlled by the petitioner. The trust instrument, as amended, provided that during the life of the petitioner or until three other daughters attained their respective majorities, the income of such trust was to be currently distributed in equal shares to the petitioners' two daughters, Helen C. George and Mary I. George, but as each of his other three daughters attained the age of majority, she was to receive an equal share of the net income of the trust. Upon the death of the petitioner, before making any distribution of principal or income of the trust estate or setting up any shares in favor of any beneficiaries under the trust, the trustees were directed, first, to pay out of either principal or income of the trust, or both, all inheritance, estate, transfer, or succession taxes assessed against it and, second, to expend any *204 of the remaining principal or income for the purpose of payment of: (a) any balance owing on inheritance, estate, transfer, or succession taxes assessed against any other estate of the grantor petitioner, (b) any taxes assessed against any trust estates in which the grantor petitioner was designated as the insured in the agreements creating such trust estates, (c) any balance owing on any just debts or funeral expenses or any unpaid expenses incurred in the administration of the estate of the grantor petitioner, (d) the bequest mentioned in item three of petitioner's last will and testament. Such expenditures were to be made only in the event the residue of the petitioner's estate, excluding his residence in St. Louis, Missouri, was not sufficient to pay such taxes, debts, expenses, and bequest in full. If the entire principal and income of the trust estate were expended for these purposes, the trust was to terminate. The trust instrument provided that upon the death of petitioner and after the abovementioned expenditures, if any, were made: that the trustees should pay over to the descendants of a deceased daughter, per stirpes, an equal share of the corpus, except that the share *205 of a minor descendant should be held in trust until the majority of the minor, and should the minor die prior to majority, his or her share should pass to his or her heir or heirs; that the remaining shares were to be held by the trustees and the income therefrom used for the benefit of the surviving daughters or paid to them after attaining their majority and throughout their lives; and that upon the respective deaths of the daughters their respective shares should be paid to those appointed by their respective wills, and in default in such appointment, their respective shares should go to their respective descendants, or if no such descendants, to the survivor or survivors of grantor's daughters or their heirs. The trustees were given broad powers of management over the trust estate, including the power to retain without liability for loss the securities deposited by the petitioner at the time the trust was created and the power to encumber or lease the whole, or any part, of the trust estate. During the lifetime of the petitioner he was to have full power to direct the trustees in regard to the sale and the investment and reinvestment of all securities held in the trust estate *206 and the trustees could purchase bonds, real estate loans, and stocks only with the approval of petitioner. The corporate trustee was relieved of responsibility for any loss by reason of the sale or purchase of any securities under the direction or approval of the petitioner. No beneficiary under the trust could sell, assign, convey, mortgage, pledge, anticipate, or otherwise dispose of any interest in the trust until paid over to her. Nor was the income or principal to any extent subject to any debts incurred by any beneficiary. The petitioner reserved the right at any time with the consent of one of his living daughters who was a beneficiary of the trust, if such daughter had attained the age of majority to alter, amend, modify, or terminate the trust agreement in its entirety. After the death of petitioner, the trust was irrevocable. The petitioner's youngest daughter, one of the beneficiaries under the trust described in the preceding paragraph, died in 1938 at the age of 23 years. Since prior to 1938 and continuously from that time up to the filing of this petition, the four surviving daughters have all been married and living apart from the petitioner and apart from each other. *207 The gross income received by the trustees during the taxable year amounted to $2,062.50. All of this amount, except trustees' commissions of $46.87, was distributed during the taxable year to the four daughters in accordance with the terms of the trust instrument for their benefit. None of this $2,062.50 was included in petitioner's tax return for 1939. The respondent included the income of the daughters' trust in the amount of $2,062.50 in the petitioner's gross income for 1939, on the ground that such income was taxable to the petitioner under sections 22(a) and/or 166 of the Internal Revenue Code. The petitioner, as grantor of the trust created for the benefit of his sons, retained an interest in the corpus of that trust substantially equivalent to continuing ownership thereof, for tax purposes, during the taxable year. The contrary is true as to the trust created by petitioner for the benefit of his daughters. Opinion TYSON, Judge: The first issue is whether or not the respondent erred in including in the petitioner's gross income for the year 1939, $75,840 which sum was income of the trust created by the petitioner for his sons less $960 which it is conceded by respondent *208 should not be so included. The respondent makes no contention that either section 166 or 167 of the Internal Revenue Code applies, but relies on the principles established in Helvering v. Clifford, 309 U.S. 331, and the petitioner contends that the present proceeding is distinguishable from that case. In our opinion, the provisions of the trust instrument for the benefit of the petitioner's sons make it clear that the petitioner retained such control over the trust corpus and income as to render him taxable as the owner thereof on the income during taxable year, under section 22(a) of the Internal Revenue Code. Factors leading to this conclusion are the reservation by the petition as grantor in article six of the trust instrument of the powers, upon giving thirty days notice to the trustees in writing, to substitute other beneficiaries in place of those under the trust, to add to the number of beneficiaries and to direct the distribution of income or principal otherwise than as provided in the trust instrument; and to alter or cancel the amount of income or principal to be distributed to or applied to the use of any of the beneficiaries; these powers, *209 however, being limited so that no income or principal of that trust estate could be paid to or applied to or for the benefit of the petitioner. Another factor to be considered is the reservation in article six by petitioner of the power at any time to direct distribution of any share to a beneficiary who might then be entitled to current income. In Brown v. Commissioner, 131 Fed. (2d) 640, (See same case on former appeal, 122 Fed. (2d) 800), provisions in the trust instrument with regard to powers retained by the grantor upon which the court relied in reaching its conclusion that the grantor was taxable with the trust income were, in effect, identical with the provisions of the above quoted article six of the trust instrument here involved, except in the Brown case there were no provisions such as those contained in the above quotation from that article lettered (C) and numbered 2. In the Brown case the court said: * * * We think that a settlor who is a person of means and who can control the spending of a fund, which she has set up, in every respect except spending it for herself is sufficiently the "owner" of *210 the fund to make its income taxable to her under § 22 (a). We think that the expression of the court quoted from the Brown case applies with equal force here, since it is our opinion that the petitioner, a man of means, with a gross income exceeding $54,000 and net income exceeding $49,000 in the taxable year, retained sufficient control over the trust estate to be regarded as the "owner" within the meaning of section 22(a). See also Commissioner v. Buck, 120 Fed. (2d) 775; and Morton Stein, 41 B.T.A. 994. On the first issue we hold that respondent did not err in including in petitioner's income $75,840 of the income of the trust created for the benefit of his sons, but we further hold that from this amount the petitioner is entitled to a deduction of the $960 paid as commissions to the trustees other than himself for their services rendered in the management of the trust estate, Frederick B. Rentschler, 1 T.C. 814; for while no alternative issue is expressly raised by the pleadings to the effect that if petitioner is taxable with the income from the trust he is entitled to such deduction, *211 we regard such an issue as implicitly embraced in the general allegation of error, that respondent erred in taxing the trust's income to petitioner. This holding takes into consideration the stipulation that another $960 commissions paid to petitioner as trusttee should be deducted from the $76,800 total income of the trust. In addition to his general contention that he is not liable under section 22 (a), supra, the petitioner contends that he did not have the power to change the beneficial interests in the income received by the trust in 1939 and that thus being unable to control the disposition of the income during the taxable year such income is, for that reason alone, not taxable to him. He argues that his power to change the beneficial interests in the income in question could not under article six, paragraph (C) of the trust instrument, have been effectuated in 1939 when that income was distributed to the beneficiary, since the trust was not created until December 23, 1939 and the required 30 days notice, had it been thereafter given to the trustees during that year, could not have become effective in that year. In the Clifford case the grantor of the trust had control *212 of its income during the taxable year there involved only in the sense that he had discretion as trustee to pay that current income to the beneficiary (his wife) or to accumulate it for ultimate distribution to her at the end of five years. Over the ultimate disposition of the total income for five years he had no control whatsoever, yet he was held taxable on the income for one of those years which he had paid, in the exercise of his discretion, to his wife In reaching its decision it is nowhere indicated that the Court considered as a factor such control as Clifford had over the income for the particular taxable year. In other words, whether or not there was such control was immaterial to decision. Conversely, the temporary lack of control of the disposition of the income for 1939 by petitioner is immaterial to our decision here. The Court stated the general controlling principle as follows: * * * Technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes should not obscure the basic issue. That issue is whether the grantor after the trust has been established may still be *213 treated, under this statutory scheme, as the owner of the corpus. Even though the income of a trust could not be controlled during the taxable year by the grantor and such income has been distributed to the beneficiaries who constituted an intimate family group, as here, that income is taxable to the grantor because of his control of the corpus. Commissioner v. Barbour, 122 Fed. (2d) 165; Helvering v. Elias, 122 Fed. (2d) 171; Commissioner v. Woolley, 122 Fed. (2d) 167; McKnight v. Commissioner, 123 Fed. (2d) 240; Bush v. Commissioner, 123 Fed. (2d) 242; Commissioner v. Wilson, 125 Fed. (2d) 307; Morton Stein, supra;Herbert W. Hoover, 42 B.T.A. 289 [Dec. 11,247]; and Reginald B. Parsons, 44 B.T.A. 1142. Cf. First National Bank of Chicago v. Commissioner, 110 Fed. (2d) 448. In none of the cited cases was the lack of power of the grantor to control, in the taxable year, disposition *214 of the income of the trust for that year considered as a factor in determining that such income was taxable to the grantor under section 22(a), supra, since in all those cases such power was lacking. In determining here whether the petitioner, as grantor, parted with the substantial ownership of the trust property, the fact that he, as grantor, could not, after the creation of the trust, have changed the beneficial interests in the 1939 income at a particular time is not the important factor to be considered. The important factor is rather the existence of the grantor's control over the trust estate generally. Accordingly, we think the contention of petitioner that the income of the trust for 1939 should not be included in his income because after the creation of the trust and during 1939 he had no power to change the destination of that income or to control its disposition is without merit. Petitioner further contends that because all his sons were, when the trust was created for their benefit and during the taxable year, over the age of 21, were married and living apart from the petitioner, and had independent income they were not members of the intimate family group within *215 the rule of the Clifford case. This contention is without merit, as the facts upon which it is based are immaterial. Commissioner v. Lamont, 127 Fed. (2d) 875, reversing 43 B.T.A. 61; Commissioner v. Berolzheimer, 116 Fed. (2d) 628, reversing 40 B.T.A. 645; and Commissioner v. Wilson, supra, reversing 42 B.T.A. 1260. Cf. Cox v. Commissioner, 110 Fed. (2d) 934; Bush v. Commissioner, supra; and First National Bank of Chicago v. Commissioner, supra. The second issue is whether the respondent erred by including in petitioner's gross income the income of the trust created by him for the benefit of his daughters. There is no contention by respondent that this income is taxable to petitioner under either section 166 or 167 of the Internal Revenue Code, but he contends that it is taxable under section 22(a), supra. The term of the trust being for the life of the grantor, and for an indefinite period after *216 his death, and there being no possibility that the grantor could himself ever acquire any part of the corpus or income thereof, except through the consent of his beneficiary daughter, it was not such a short term trust as to be considered as a factor in determining whether petitioner retained such control of the corpus as to remain substantially the owner thereof and consequently taxable with the income therefrom under section 22(a), supra, within the rule announced in Helvering v. Clifford, supra. This being true, the only factors here present which could be reasonably suggested as bringing the income in question within that rule are: (1) that the beneficiaries were members of petitioner's intimate family group; (2) that petitioner as grantor retained the power to direct the trustees as to investments and reinvestments of all securities of the trust estate and without approval of the grantor the trustees could not purchase bonds, real estate, loans, or stocks; (3) that petitioner could, with the consent of one of his daughters over the age of 21 and who was a beneficiary of the trust, modify or terminate the trust; and (4) that the principal and *217 income of the trust on hand at the death of petitioner could be used for payment of certain liabilities, if any, of petitioner's estate, - provided a certain portion of the residue of petitioner's estate was not sufficient to make such payment. The control of petitioner over the management of the trust estate through his retained power to direct the trustees was not complete, since beyond and excluded from that control were the unrestricted and important powers of the trustees to retain the securities conveyed to the trust at the time of its execution and to encumber and lease the whole or any part of the trust estate. Such incomplete control of management by petitioner, if a factor to be considered in connection with the other factors here present, is one of minor importance on the question of whether petitioner retained such control over the trust estate as to be considered for tax purposes, the owner thereof. Commissioner v. Branch, 114 Fed. (2d) 985; Commissioner v. Betts, 123 Fed. (2d) 534; Jones v. Norris, 122 Fed. (2d) 6; Carleton H. Palmer, 40 B.T.A. 1002, *218 affirmed per curiam, 115 Fed. (2d) 368; John N. Fulham, 44 B.T.A. 1183; and Emma B. Maloy, 45 B.T.A. 1104. We also think that the fact that the petitioner could modify or terminate the trust with the consent of a beneficiary daughter over the age of 21, if a factor, is one also of minor importance having little, if any, weight as showing that petitioner could control the disposition of the trust estate or its income, - since it cannot be assumed that a daughter at the age of discretion, having a vested adverse interest in that estate and income would consent to a change at least in any manner, except such as would be advantageous to her, and this being the only probable change, the petitioner would be precluded from modifying, or terminating the trust, in so many other possible ways as would render it unreasonable to say that under this joint power he had such complete control of the disposition of the corpus or income therefrom as would render him substantially the owner thereof. In the recently decided case of Howard Phipps v. Commission, ( June 30, 1943), the Circuit Court of Appeals *219 for the Second Circuit in speaking of probability of the control of a husband over the exercise of the powers of a wife as a co-trustee in a trust created by her husband in which she was also a beneficiary, said, in commenting on the Clifford and Buck cases: Nothing in those cases suggests that a wife, who has an obviously selfish adverse interest in receiving income for herself, is so lacking in independence that it is to be conclusively presumed that she will exercise her powers as a trustee in accordance with the wishes of her husband. We think this expression of the court is equally applicable to the daughter here. Also we think that the fact that the corpus and income of the trust in certain eventualities might be used for the discharge of certain of petitioner's liabilities after his death constitutes no factor as showing that he retained such indicia of ownership as would bring the income from the trust within the rule of the Clifford case. Such indicia would not necessarily exist even if the provisions of the trust instrument here had provided for the return of the corpus of the trust to the petitioner during his lifetime; Reginald B. Parsons, supra; *220 provided the period of the trust was not of such short duration as to bring it within the rule of the Clifford case; and we have found that this trust was not such a short term trust. We are of the opinion that all the above factors combined fail to bring the income of the trust created by petitioner for the benefit of his daughters within the operation of section 22(a), supra, or of the rule of the Clifford case, and hold that the income from that trust, in the taxable year, is not includable in the taxable income of the petitioner for that year. With regard to the third issue, the stipulated facts are that "during the taxable year petitioner paid to Josiah Kirby & Company, $1,636.67 non business expenses for the production of income or for the management and conservation of property held for the production of income." On brief, respondent concedes that this issue is controlled by section 121 of the Revenue Act of 1942, and we hold that that amount is deductible from petitioner's gross income for the taxable year. Decision will be entered under Rule 50.