Harry Edison v. Commissioner.
Edison v. Commissioner
Docket No. 1098.
United States Tax Court
1944 Tax Ct. Memo LEXIS 219; 3 T.C.M. (CCH) 531; T.C.M. (RIA) 44194; June 6, 1944
*219 David Baron, Esq., 208 N. Broadway St., St. Louis, Mo., for the petitioner. W. Frank Gibbs, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioner's income tax for 1938, 1939, 1940 and 1941, in the respective amounts of $2,619.30, $3,252.27, $7,545.29 and $9,988.22. The issue here is whether the income of certain trusts created by petitioner is taxable to petitioner. Another issue relating to a deduction for depreciation on property located in Mobile, Alabama, has been resolved by respondent's answer admitting error. Findings of Fact The petitioner is an individual residing in St. Louis, Missouri, who filed his income tax returns for the taxable years 1938, 1939, 1940 and 1941 with the collector of internal revenue at St. Louis. During these years, petitioner was president, a director and a large stockholder in Edison Brothers Stores, Inc., a Delaware corporation with principal offices in St. Louis, and engaged in the operation of retail shoe stores throughout the United States. His salary and the amount of dividends received from that corporation, and his net income disclosed by his income tax returns for *220 the years in question, were as follows: Year
Salary
Dividends
Net Income
1938
$35,915.05
$45,925.00
$76,368.27
1939
35,915.05
44,420.00
75,737.48
1940
32,323.54
50,576.50
80,654.43
1941
32,323.54
55,014.20
116,430.44
Petitioner is the father of two children, Sidney J. Edison, born August 1, 1915, and Edna L. Edison, born June 15, 1920. The son has lived in New York since 1935, and was married in 1940. The daughter during all the taxable years involved here, was unmarried and lived with her parents in St. Louis. On May 24, 1938, petitioner executed two irrevocable trusts, one for the benefit of his son, and one for the benefit of his daughter, with himself as sole trustee. The corpus of each trust consisted of 2,500 shares of common stock of Edison Brothers Stores, Inc., and, in addition, he transferred to the trust for his daughter 25 shares of common stock of Mercantile Commerce Bank and Trust Co. of St. Louis. On June 18, 1940, petitioner added to the corpus of the trust for his son 2,500 additional shares of common stock of the Edison Company, and on December 16, 1941, he added to the daughter's trust an additional 2,000 shares of that stock. On May *221 24, 1938, just prior to the transfer to the two trusts of the 5,000 shares originally constituting the trusts, petitioner owned 40,576 shares of the common, and 50 shares of preferred stock of the Edison Company, out of 385,490 shares of common, and 60,000 shares of preferred stock then outstanding. On June 18, 1940, just prior to the transfer of the 2,500 shares to the son's trust petitioner owned 35,301 shares of common stock and 50 shares of preferred. On December 16, 1941, just prior to the transfer of 2,000 shares to the daughter's trust, petitioner owned 32,876 shares of common and 50 of preferred. The stock was listed on the New York Stock Exchange during all the years with which we are concerned. Petitioner reported the gifts to the trusts at the following values, the 2,500 shares of Edison stock given to each trust in 1938 at $25,000; the value of the 2,500 shares given to the son's trust in 1940 at a value of $27,500, and to the 2,000 shares to the daughter's trust in 1941 in the amount of $27,000. Petitioner has acted as sole trustee since the establishment of the trusts and, as such, has filed fiduciary income tax returns for each of the years here in question, reporting *222 the following data: Sidney J. Edison Trust
Dividends
Income
Undistributed
Received
Distributed
Income
Tax Paid
1938
$2,510.00
$2,510.00
$ 96.40
1939
3,175.00
$1,400.00
1,757.35
66.29
1940
6,310.00
2,132.06
4,167.07
181.90
1941
8,568.00
3,166.25 *
5,349.98
672.50
Edna L. Edison Trust
Dividends
Undistributed
Received
Income
Tax Paid
1938
$2,585.00
$2,585.00
$ 99.40
1939
3,400.00
3,400.00
131.27
1940
4,110.00
4,110.00
174.75
1941
5,638.00
5,638.00
712.65
The income received by petitioner as trustee of these trusts was kept by him in separate bank accounts. The Sidney J. Edison trust identure provided that the trustee, during the lifetime of the son, shall, in quarterly or other convenient installments, pay over to him all or such portion of the net income of the trust as the trustee in his uncontrollable discretion shall think advisable or necessary for his comfort, support, education, or ease, or shall, either directly or through some person selected by him for that purpose, use or apply all of such net income or so much thereof as the trustee in his uncontrollable *223 discretion shall deem sufficient for the comfort, support, education or ease of Sidney J. Edison. Any portion of the income not thus paid over, used or applied shall be added to the corpus of the trust fund.
The trust also provided that the trustee in his uncontrollable discretion, could encroach upon the corpus "to help him start in business or some other vocation or profession." The trust provided "If all of said corpus shall be thus paid, used or applied, this trust shall then cease and terminate." Provision was made for the continuance of the trust after the son's death, with or without issue, with remainder to Edna in the event of Sidney's death without issue. The trust contained spendthrift clauses, and the following provision: "3. The Trustee shall hold, possess, manage and control the said trust estate and every part thereof, with full power to sell, transfer, convey, dispose of, rent, lease, mortgage, pledge, encumber, invest, and reinvest the same, upon such terms and in such manner as to the said Trustee shall seem meet and proper; to receive, collect, sue for and recover the principal of the same, and the rents, dividends, interest, income, issues and profits thereof. *224 "It is not intended to limit the Trustee in investing the assets of the trust estate to what are commonly denominated as 'legal investments for trustees', but on the contrary to give said Trustee full and plenary powers of investment such as he would possess if he were the absolute owner of the 'trust estate' in his private individual capacity. "The Trustee is hereby given full power and authority to invest and reinvest all or any part of the said trust estate which may come into his hands, in such a manner and in such bonds, stocks, notes, real estate mortgages or other securities or other property, personal or real, and upon such terms and for such length of time, as to the Trustee shall seem meet and proper; it being intended hereby to give unto the said Trustee full and complete authority to hold, possess, manage, control, sell, convey, dispose of, encumber, lease, invest and reinvest the whole and every part of the said trust estate, according to his sole judgment and discretion, and his powers and authority so to do shall not be limited or restricted to securities of the character authorized or permitted as suitable for the investment of trust funds by statutes or decisions *225 of courts pertaining thereto or by any implication therefrom. "The Trustee shall have full power without accountability for loss (whether through depreciation in value or otherwise), to retain at his discretion as investments of the trust estate any or all property, personal or real, that may come into his hands either at the beginning of this trust or at any time thereafter. "The Trustee shall have the power to determine whether any money or property coming into his hands shall be part of the capital or corpus of said trust estate or part of the income therefrom and to apportion between such capital and income any loss or expenditure in connection with such trust estate which in his opinion should be apportioned in such manner and division as to him may seem just and equitable." Petitioner's wife and two brothers are named as successors to petitioner as trustee. The trust for petitioner's daughter differed from that for the son only in the following material respects: it provided that until she shall attain her majority, "the Trustee shall permit the net income of said trust to accumulate and as it accumulates it shall become part of the corpus of the trust." After she attained *226 the majority, the net income was to be distributed to her under, the same provisions as were set out in the son's trust. As in the son's trust, provision was made for the continuance of the trust after her death, with or without issue; in the later event, the son, if living, was the remainderman. Petitioner retained such control over the property of the trusts as to remain substantially the owner thereof for tax purposes. Opinion KERN, Judge: The respondent believes the income of the two trusts involved here is taxable to petitioner within the doctrine of Helvering v. Clifford, 309 U.S. 331, under the provisions of section 22 (a) of the Internal Revenue Code. We have frequently emphasized (see George T. Whiteley, 2 T.C. 618) the necessity of considering each case arising in this field on its own facts in order to determine whether the donor retained powers with respect to the trust property substantially equivalent to ownership for tax purposes within the broadly inclusive terms of section 22 (a). Here, as usual, we have certain provisions closely resembling the Clifford trust, with enough points of divergence to require *227 a careful consideration of all the trust provisions and other collateral facts to determine whether the points of divergence balance or outweigh the factors which call for the application of the Clifford doctrine. Each of the two trusts has one feature which is not present in the other. Otherwise, the trusts are similar and can be considered together. The trust for the daughter provides that until she shall attain her majority, the trustee shall permit the net income to accumulate, and as it accumulates it shall become part of the corpus. After she has attained her majority, the income may be paid or accumulated in petitioner's absolute discretion, exactly as in the case of the trust for the son, who was an adult when the trusts were created, and whose trust therefore contained no similar provision. However, the trust for the daughter further provides that petitioner may invade the corpus for her benefit in his "uncontrollable discretion". Thus, even during her minority, immediately upon the accumulation of the trust income and its addition to the corpus, petitioner could distribute it in whole or in part as "corpus". Petitioner sought to establish that it was not his intention *228 to retain the power to invade the corpus during the daughter's minority, which includes most of the period comprising the taxable years. But the trust instrument is quite clear and unambiguous, and contains no hint of any limitation on his power to invade the corpus. He had no difficulty expressing his desire in that respect in the clause relating to income. We must assume that the language used in each instance reflects his intention. If he were allowed now to say he meant something different from the plain context of the instrument, he would be equally within his rights to disclaim any of the other specific powers and provisions, clearly expressed, but which tend to make him subject to liability for the tax. By its terms, the trust instrument gives him the power throughout the tax years to invade the corpus swollen by the absorption of the accumulated income. The practical effect of this power is to enable him to distribute the income to her at any time as "corpus", so that this distinction between the two trusts is without reality. As to the trust for the son, the distinction to be observed is the fact that he was at all times an adult, living apart from his parents, while the *229 daughter was living in their household, and was, during most of the period in question, a minor. The petitioner is most insistent that, since he has irrevocably parted with title to the trust property, without any reversionary rights, he can not be taxed upon its income. We have often had occasion to refer to the language of the Supreme Court in Corliss v. Bowers, 281 U.S. 376, to the effect that we are not so much concerned in these cases with the nice refinements of title as with the actual powers of control retained by the grantor. That the trusts are irrevocable, or of long terms; or that there is no right of reversion; or that there is the combination of all these, do not preclude the taxation of the income to the grantor, where he has retained other rights and powers of such magnitude as to justify the result. See Murphy Shannon Armstrong, 1 T.C. 1008; Verne Marshall, 1 T.C. 442 (in which however there was a possibility of reversion after the death of the primary beneficiary); Frederick B. Rentschler, 1 T.C. 814; Ellis H. Warren, 45 B.T.A. 379, *230 affirmed 133 Fed. (2d) 312; Morton Stein, 41 B.T.A. 994. Briefly, there are these facts which tend to indicate taxability to petitioner under the Clifford case and the case of Helvering v. Stuart, 317 U.S. 154; the grantor is sole trustee of each trust, with the broadest powers of management, including complete powers of investment and sale, without responsibility for loss; the power to allocate moneys received by the trusts to principal and income; the power during his life to appoint different successor trustees than those named; and, as we have seen, unlimited power to pay or accumulate the income (either as such, or as "corpus") throughout the lives of the beneficiaries. In addition, he had power to invade the corpus at his discretion and to vote the trustee stock in the corporation of which he was president, director and large stockholder. The trusts were for the benefit of his son and daughter, but the fact that the son was an adult living separately is properly an element for consideration. We have reached the conclusion, after carefully weighing these rights and powers against *231 those of which petitioner divested himself, that he has retained too firm a grasp on the trust property to be relieved of the tax on the income. While we are unable to say from the evidence exactly how important it was to him to control the stock in the trusts, we think it fair to assume from the fact that he held such a large block of the stock, which was listed on the New York Stock Exchange, and undoubtedly widely held, and that he was an officer and director of the corporation, that he was at least one of the principal single shareholders. Control of the trust stock, together with that which he continued to hold individually, may well have been of supreme importance to his economic welfare. While he reserved no express power to change beneficial interests, petitioner did retain unrestricted power to distribute or accumulate the income during the lives of the primary beneficiaries. We can not see much practical difference between the power to shift beneficial interests between two or more known and named beneficiaries, on the one hand, and the power to shift such interests between one named beneficiary and remaindermen of unascertained identity. The absolute, continuing right *232 to say who shall and who shall not enjoy the income is present in both instances. See Louis Stockstrom, 3 T.C. 255. In Commissioner v. Armour, 125 Fed. (2d) 467, the Court regarded the fact that the beneficiary was an adult maintaining a separate domicile as a significant factor in its decision that the grantor was not taxable on the income of the trust. But it becomes apparent from the language of the opinion that this was by no means the only, or even the controlling element there; the case is readily distinguishable on other grounds, notable among which is the fact that the grantor could exercise no control over the distribution of the income to the beneficiary. Petitioner relies extensively on Katz v. Commissioner, 139 Fed. (2d) 107, affirming 46 B.T.A. 187, where, although the trust property consisted of stock in the corporation of which the grantor was president and a large stockholder, his employment as president arose out of a written contract for a term of years, which protected his means of livelihood, regardless of his stock ownership. The grantor *233 had no power to invade the corpus, and no right to allocate the income to principal or income, as the petitioner here has. The case of Lura H. Morgan, 2 T.C. 510, cited by petitioner, is distinguishable by the fact that the control of the stock in the trust could not possibly be of economic advantage to the grantor, who is not shown to have held any office in the issuing corporation nor had she any discretion whatever over the distribution or accumulation of the income, or the corpus, both of which were payable at all events to the beneficiary at specified times. It is significant, perhaps, that as to another trust, involved in the same proceeding, in which the taxpayer retained a limited power to change beneficiaries, the income was held to be taxable to her. To the suggestion of petitioner that, under Missouri law, no person can vote stock of a Missouri corporation held by him as trustee, for himself as officer or director, without the consent of the beneficiaries, it is necessary to note only that the stock held in these trusts was stock of a Delaware corporation. Decision will be entered under Rule 50. Footnotes
*. distributed to beneficiary↩