Amory S. Carhart v. Commissioner.
Amory v. Commissioner
Docket No. 6643.
United States Tax Court
1946 Tax Ct. Memo LEXIS 159; 5 T.C.M. (CCH) 579; T.C.M. (RIA) 46141; June 20, 1946
Frank J. Wideman, Esq., 822 Connecticut Ave., N.W., Washington, D.C., for the petitioner. Walt Mandry, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, Judge: By this proceeding petitioner seeks a redetermination of deficiencies in income tax for the years 1940 and 1941 in the amounts of $4,888.07 and $5,874.89, respectively. The sole issue is whether the unexpended, accumulated income of two trusts for the benefit of petitioner's minor children is taxable to petitioner, grantor and co-trustee *160 of the trusts, under section 22 (a) of the Internal Revenue Code. All of the facts have been stipulated. They are hereby found accordingly and can be summarized as follows: Petitioner is a resident of Virginia, with an office in New York, New York. His income tax returns for the years involved were filed with the collector of internal revenue for the second district of New York. By trust instrument, dated April 22, 1932, petitioner created two trusts, one for each of his two minor children - Amory Sibley Carhart, Jr., born on December 25, 1919, and Marion Carhart, born on January 24, 1925. Petitioner and his wife Isadora Bliss Carhart, were the trustees. The trustees were to divide the corpus, designated in the instrument as the "Trust Estate," which consisted of stocks and bonds of various utilities, railroads, and industries, into two equal shares, one for the benefit of each child; to collect the income and apply so much of it during the lifetime of petitioner's wife, or until earlier termination of the trusts, to the maintenance, support, and education of each child as the trustees in their discretion deemed necessary and proper until such child should *161 attain the age of 21 years. The balance of the income, if any, was to be accumulated and was to be paid over to such child upon the attainment of 21 years of age. Each of the trusts was to terminate upon any of the following contingencies: Petitioner's death, his wife's death, the death of the child before reaching 21 years of age, the child's attainment of 21 years of age. Upon termination, the trustees were directed to pay over to petitioner the corpus of the particular trust. If, however, termination were due to petitioner's death, payment was to be made to the appointees under his will, in default of which to his surviving children in equal shares. The following powers were granted the trustees: 1. To sell at public or private sale, to exchange or otherwise to dispose of all or part of the corpus, upon such terms and conditions as seemed proper to them; 2. To borrow money for certain enumerated purposes and "for any other purpose whatsoever which they in the exercise of their uncontrolled discretion shall deem necessary or desirable * * * it being the Grantor's intention to give the Trustees a general power to borrow money for any purpose whenever they shall deem it advisable *162 for the best interests of the Trust Estate so to do"; and in order to secure payment to pledge or mortgage any property of the trust estate. 3. To distribute and divide the trust estate in cash or in kind, to execute proper instruments and to take other necessary steps to accomplish this purpose. 4. To improve, alter or rebuilt any building or erect new buildings on the trust real estate, to join with others in doing so, and to employ competent persons to manage the real estate; 5. To lease any real property in the trust estate and to assign such leases. 6. To retain temporarily or permanently any real estate belonging to the trust estate without being under any obligation to dispose of it, to invest or reinvest in securities of any kind without restriction, saving to the trustees "all the power * * * which the Grantor now has with respect thereto" to convert personalty into realty and vice versa. 7. To exercise in person or by proxy all voting privileges upon stocks held by them, to unite with other owners in any plan of renegotiation, merger or consolidation "and generally to exercise with respect to such securities all the rights, powers and privileges which they might *163 exercise if they were possessed of such securities in their own right." 8. To invest in bonds at a premium without providing a sinking fund out of income to absorb such premium for the benefit of the remaindermen; to treat cash dividends as income, to divide between life tenants and remaindermen any stock dividends, to hold any securities in the names of nominees. 9. To settle claims of the trust estates without liability for any loss to the trust estate unless occasioned through their gross negligence or wilful malfeasance, and not to be liable for any act done in good faith. The income of each of the trusts consisted of dividends and interest from the securities constituting the original corpus of the trusts and from securities purchased and received by the trustees. The net taxable income from each of the trusts for the years involved is as follows: Amory S. Carhart, Jr., Trust
1940
Ordinary income
$9,406.19
Capital gain
188.72
Total income
$9,594.91
Marion Carhart Trust
1940
1941
Ordinary income
$9,021.62
$11,884.59
Capital gain
164.79
Total income
$9,186.41
$11,884.59
For the year 1940 the trustees applied from income for *164 the maintenance, support, and education of Amory Carhart, Jr., and Marion Carhart, the sums of $4,345.61 and $6,965.17, respectively; for the year 1941, the sum of $3,637.96 was so applied for Marion Carhart. The total sums so applied for the year 1940 were reported as income of petitioner for that year and income tax was paid accordingly. Of the sum of $3,637.96 applied for the year 1941, petitioner reported as income for that year the sum of $3,022.65, and income tax was paid accordingly, but petitioner did not report as income the balance thereof - $615.31. The remaining portions of the respective incomes for 1940 were reported and taxes paid by the trustees as income of the respective trusts for that year. The trustees reported as income of the trusts for 1941 the sum of $8,427.88. No part of the income of the trusts for the years 1940 and 1941, except capital gains and the amounts applied for the maintenance, education, and support of the minor children as hereinabove set forth, was distributed, held, or accumulated for future distribution to petitioner or applied to the payment of premiums upon insurance policies on his life. Upon his attainment of the age of 21 years *165 on December 25, 1940, there was distributed to Amory Carhart, Jr., pursuant to the terms of the trust instrument, the accumulated income upon the termination of this trust; the corpus of such trust was delivered to petitioner. Written consents and agreements in duplicate were duly filed in due form by petitioner with respondent, electing to have section 167 (c) of the Internal Revenue Code applied retroactively to the years in question. With respect to the income of these trusts, respondent included in petitioner's income for the year 1940 ordinary income and capital gains aggregating $7,470.54, and for the year 1941 ordinary income of $8,861.94, less a capital loss of $7,776.63. Except that these trusts were originally created for terms which might extend for something less than nine and fourteen years, respectively, this petitioner had every element of a grantor's retained interest which was present in Helvering v. Clifford, 309 U.S. 331. During the years involved, the longer trust had but five or six years left to run. When a grantor has retained the reversion, as he did here, but the term of the trust is comparatively short, the retention *166 of administrative control by the grantor is not a requisite of its taxability. In O. G. Richter, 46 B.T.A. 724, 726, the trust differed from that in the Clifford case "in that petitioner retained and exercised no control over the trust during its existence. We believe, however, that the short term of the trust (approximately five and one-half years) and the close family relationship of petitioner and the beneficiary are sufficient to cause the trust income to be taxed to petitioner under section 22 (a)." If the trust is substantially longer than the five-year term involved in the Clifford case, the doctrine of that case does not automatically eliminate itself, but instead, elements of control become important. "* * * it appears to us that it is only when the term is longer than six or seven years (as for example ten years, Commissioner v. Jonas, 2 Cir., 122 F.2d 169) that the settlor's legal reservation of control becomes vital, certainly if the settlor and the trustees are not strangers." Helvering v. Elias (C.C.A., 2nd Cir.), 122 Fed. (2d) 171, 173. In the present case petitioner and his wife were the trustees. Control and management were *167 complete. They furnish the additional element necessary in dealing with trusts of substantially longer duration, whether we regard the term as for the wife's lifetime, Morton Stein, 41 B.T.A. 994, Verne Marshall, 1 T.C. 442, or a fixed period. Sterling Morton, 45 B.T.A. 771. See also Joel E. Hall, 4 T.C. 506, reversed (C.C.A., 10th Cir.), 150 Fed. (2d) 304; Commissioner v. O'Keeffe (C.C.A., 1st Cir.), 118 Fed. (2d) 639, reversing Board of Tax Appeals memorandum. For example, the expressly designated powers of the trustees included authority to shift investments. A more pressing concern for safety or increase of principal than for regularity and amount of current yield could well constitute an instance where exercise of that power would affect the respective financial interests of those concerned, including the petitioner himself. If more were needed, the possibility of discretionary use of the income for the discharge of petitioner's legal obligations is a factor which may also be taken into account, notwithstanding the provisions of section 167 (c). Estate of O. M. Banfield, 4 T.C. 29. *168 None of the cases cited by petitioner bears upon the present problem. They deal for the most part with the quantum of control required in non-reversionary cases. E.g., Joel E. Hall, supra; David Small, 3 T.C. 1142; Frederick Ayer, 45 B.T.A. 146; Estate of Benjamin Lowenstein, 3 T.C. 1133. The extent of the present petitioner's retained interest, in view of all the circumstances including the ultimate return to him of the corpus, the intermediate term of the trusts, the relationship to him of the beneficiaries, and his continued possession of all phases of management and control, bring the present trusts within the primary and original phase of the strict Clifford doctrine. The deficiencies seem to us to have been correctly determined. Decision will be entered for the respondent.